ALTENBERND, Judge.
James McIntosh appeals a final order denying his motion for postconviction relief in which he raised seven grounds of inef *2 fectiveness of counsel. We conclude that two of the grounds involve deficient performance by his trial counsel. Although the issue is close, we also conclude that Mr. McIntosh has established the degree of prejudice that warrants a new trial in this case. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Mr. McIntosh was charged with attempted first-degree murder for the stabbing of eighteen-year-old Kenneth Brooks. At trial, Mr. McIntosh alleged that he stabbed Mr. Brooks in the neck with a pocketknife in self-defense. Our record contains the transcript of the testimony presented at Mr. McIntosh’s trial.
Mr. Brooks was a friend of Sharon McCall, who apparently had a relationship with Mr. McIntosh’s brother, John Avery. About a week before this incident, Mr. Brooks lost $80 while visiting Ms. McCall at Mr. Avery’s apartment. When he realized that he had lost his money, Mr. Brooks immediately returned to look for it. The money could not be found, and Ms. McCall and Mr. Avery denied any knowledge of it. Mr. Brooks became angry and left, promising to return the following week for the money.
Mr. Brooks returned the following Saturday evening at approximately 10 or 11 p.m. Mr. Brooks, Ms. McCall, and Mr. McIntosh each testified to the events that followed, but each description varied considerably. Each agreed, however, that Mr. Avery answered the door first, refused to give Mr. Brooks any money, and slammed the door in Mr. Brooks’ face. After a short time, Mr. Brooks returned and knocked or kicked at the door again. This time, Mr. McIntosh answered the door.
Mr. McIntosh was about fifty-five years old on the day of the incident. At trial, he testified that he was at the house because he knew that Mr. Brooks had been threatening Mr. Avery and Ms. McCall. According to Mr. McIntosh, Ms. McCall had told him that Mr. Brooks carried a gun. Mr. McIntosh claimed that when he answered the door, he too told Mr. Brooks to leave and slammed the door in his face. This time Mr. Brooks immediately started beating on the door again. Mr. McIntosh claimed that he did not call the police because the house had no telephone.
Mr. McIntosh opened the door again and stepped out onto the front porch. Although Mr. Brooks testified that Mr. Avery and Ms. McCall also stepped outside and participated in the affray, Mr. Avery did not testify and Ms. McCall claimed that she and Mr. Avery remained inside and did not witness the altercation. According to Mr. Brooks, Mr. McIntosh pushed him backwards, whereupon Mr. Brooks grabbed Mr. McIntosh by the waist. The two were physically struggling when Mr. McIntosh stabbed Mr. Brooks.
According to Mr. McIntosh, Mr. Brooks attacked him, and at some point pushed away and reached behind his back. Mr. McIntosh thought that Mr. Brooks was reaching for a gun. Mr. McIntosh testified he then pulled out a small pocketknife and stabbed Mr. Brooks once in the neck. Mr. McIntosh, Ms. McCall, and Mr. Avery quicWy left the area, ignoring Mr. Brooks’ calls for help. Mr. McIntosh and Ms. McCall both testified that they heard Mr. Brooks state that he was only trying to reach for a beeper. Mr. Brooks admitted that he had a beeper on his person when the stabbing occurred.
Mr. Brooks’ stab wound was less than three-fourths of an inch across, but rendered him partially paralyzed. He identified Mr. McIntosh as the person who stabbed him. Mr. McIntosh was arrested a few days later. He initially denied any *3 involvement in the events leading up to the stabbing. No knife was ever recovered.
Based upon this evidence, the jury corn victed Mr. McIntosh of the lesser-included offense of attempted second-degree murder. He was sentenced to life imprisonment. We affirmed Mr. McIntosh’s judgment and sentence on direct appeal. McIntosh v. State, 819 So.2d 767 (Fla. 2d DCA 2002).
Mr. McIntosh filed a timely motion for postconviction relief, alleging seven grounds of ineffective assistance of counsel. After an evidentiary hearing on six of the grounds, the circuit court denied the motion. We affirm the denial of grounds two through five and ground seven without further comment. We reverse, however, the denial of grounds one and six.
In ground one, Mr. McIntosh asserted that his trial counsel was ineffective for failing to object when, during recross-examination of Mr. McIntosh, the prosecutor pulled out his own personal knife to demonstrate his theory that Mr. McIntosh did not have time to pull the knife in self-defense and thus must have come prepared to fight. Although the knife Mr. McIntosh had used was described as an ordinary pocketknife, the prosecutor pulled out a “long, white butterfly knife” about eight to ten inches long. Defense counsel did not object, even ‘though no knife was in evidence and the demonstration knife was three times larger than an ordinary pocketknife. Indeed, at the post-conviction hearing, defense counsel did not even recall the prosecutor doing this, although the prosecutor admitted that he had done so.
The prosecutor’s knife, of course, was not introduced into evidence, and there is no indication that he ever apprised the trial court or defense counsel of his intent to use it. The knife that the prosecutor used was not one that a man might ordinarily carry on his person for utility purposes; it was the kind of knife that an aggressor would take to a fight, and quite possibly it was an illegal concealed weapon. Even if the prosecutor’s personal knife had been admitted into evidence, it would not have been a proper demonstrative exhibit. See, e.g., Chamberlain v. State, 881 So.2d 1087, 1102 (Fla.2004); Brown v. State, 550 So.2d 527 (Fla. 1st DCA 1989) (holding demonstrative exhibits may be used to aid in the jury’s understanding only if they are accurate and reasonable reproductions of the object involved). There was no evidence that the prosecutor’s knife was an accurate and reasonable reproduction of the one actually used by Mr. McIntosh. In fact, Mr. McIntosh’s testimony at the evidentiary hearing, which was unrefuted, was that the knife produced by the prosecutor was significantly different and significantly larger than the knife he used during the incident.
Defense counsel was given another chance to address the prosecutor’s actions when the jury returned from deliberations to ask: ‘What happened to the knife? And what are its dimensions?” Defense counsel did not request that the trial court clarify to the jury that the knife used by the prosecutor was not evidence and was not intended to replicate the knife Mr. McIntosh actually used. Rather, defense counsel permitted the trial court to instruct the jury as follows:
As I told you yesterday afternoon, you’ve heard all of the evidence you’re going to hear and seen all of the evidence you’re going to see. This is it. So you must base your deliberations on what you have seen and heard. So please return to the jury room and deliberate your verdict.
The State’s theory of this case was essentially that Mr. McIntosh had been *4 called to the house to protect the occupants and that he came prepared to do battle with Mr. Brooks. Thus, the State argued that Mr. McIntosh did not have time to pull his pocketknife in the heat of the battle, to open it, and to strike Mr. Brooks during the time that he believed Mr. Brooks was reaching for a gun. Inu plicit in the State’s argument was the fact that Mr. McIntosh had brought the knife to fight and had it ready to wield when he answered the door.
The evidence in this case strongly supported the theory that Mr. Brooks provoked the fight. While the prosecutor is correct that it would have taken Mr. McIntosh some time to pull and open a common pocketknife, the description of events on the front porch was far from precise and would have allowed the jury to determine that Mr. McIntosh had ample time to pull out the knife when the men separated. Even‘if the jury decided that Mr. McIntosh drew the knife before he opened the door the second time in response to Mr. Brooks’ banging and kicking, we are not convinced that this fact would preclude a finding of self-defense.
In this context, the prosecutor’s decision to use a large knife in his demonstration was a critical error related to the heart of Mr. McIntosh’s sole defense, and one that went unchallenged by defense counsel. Given the jury’s later question regarding the type of knife used and the jury’s decision to convict Mr. McIntosh of a lesser-included offense, we conclude there is a reasonable probability that, but for counsel’s failure to object to this damaging demonstration, the result of the proceeding would have been different and our confidence in the outcome is undermined. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
Concerning ground six, during the trial defense counsel called Ms. McCall as a witness. Her testimony was somewhat helpful to Mr. McIntosh because it tended to support his claim of self-defense. Ms. McCall testified that Mr. Brooks was “crazy” and that he had a reputation for carrying a gun with which he had threatened her on a prior occasion. Her testimony that she heard Mr. Brooks say that he was only reaching for a beeper supported Mr. McIntosh’s claim that Mr. Brooks reached behind his back during the altercation. However, Ms. McCall also testified that Mr. McIntosh threatened her with the knife and ordered her not to contact the police.
Mr. McIntosh testified on direct examination that he never threatened Ms. McCall and, that perhaps she “lied” about the threats because the State made her a deal to testify against him. The prosecutor, on cross-examination, used this response as a justification to ask: “Let me ask you this, sir: You don’t think anything Ms. McCall said is credible; you think she’s lying about everything, right?”
Although this question was completely improper and should have been objected to, it drew no objection from defense counsel. See, e.g., Knowles v. State, 632 So.2d 62 (Fla.1993) (prosecutor’s question asking appellant whether he thought two state’s witnesses were lying was improper); Mosley v. State, 569 So.2d 832 (Fla. 2d DCA 1990) (prosecutor’s questioning defendant whether previous witnesses had lied entitled defendant to a mistrial); Izquierdo v. State, 724 So.2d 124, 126 n. 2 (Fla. 3d DCA 1998) (prosecutorial misconduct found where prosecutor asked appellant if his defense witness was a liar).
Mr. McIntosh’s testimony that Ms. McCall had lied about the alleged threats did not open the door for the prosecutor to imply that Mr. McIntosh believed all of her testimony was a lie. Mr. McIntosh *5 had not discredited Ms. McCall’s entire testimony prior to the prosecutor’s improper question. Although Ms. McCall did give some harmful testimony, she was still the only defense witness other than Mr. McIntosh and her testimony tended to support Mr. McIntosh’s self-defense theory.
This error was compounded when the prosecutor repeatedly restated in his closing arguments that Mr. McIntosh called his own witness a liar, again without objection. This singular error may not have been sufficient to establish the prejudice required by Strickland, to warrant a new trial. However, when this conduct by the prosecutor is added to his decision to use his own large knife during his recross-examination of Mr. McIntosh, we are convinced that Mr. McIntosh was deprived of the fair trial that the Strickland standards are designed to protect.
Reversed and remanded.
NORTHCUTT and SILBERMAN, JJ., Concur.